(No. 3868— 

HENRY HAYWARD, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed June 12, 1945.*

OLIVER A. CLARK, for claimant.

GEORGE F. BARRETT, Attorney General; WILLIAM L. MORGAN, Assistant Attorney General, for respondent.

CHIEF JUSTICE DAMRON delivered the opinion of the court:

This complaint was filed on July 22, 1944, seeking compensation benefits for an injury received by the claimant on the 22nd day of March, 1944.

The record consists of the complaint, departmental report, transcript of evidence, and waiver of brief, statement and argument on behalf of claimant and respondent. The complaint alleges that Henry Hayward resides in Chicago, and was employed by the respondent in the Division of Highways as a laborer, working on the repair, maintenance, and construction of highways in the State of Illinois; that while so employed, he earned the sum of $6.00 per day and worked six days a week; that on the 22nd day of March, 1944, his left hand slipped in to a mixing machine while he was mixing blacktop, injuring his third, index, and little fingers.

The complaint further alleges that the accident was reported immediately to his superior, and that he has been incapacitated for work by reason of said injury since the date thereof; that all medical care and attention was provided by the respondent and that he received nothing for temporary total compensation.

The complaint further alleges that as a result of said accident, he sustained the loss of the third finger by amputation, and has lost the use of his left hand, which he believes will result in the permanent loss of use of the hand. He seeks an award, under the Workmen's Compensation Act, for temporary total compensation and for specific injuries in the sum of $3,000.00.

The evidence of this claimant was taken on the 7th day of April, 1945. At that time, a stipulation was entered into by and between the claimant and respondent that at the time of the alleged injury the claimant and respondent were operating under the Workmen's Compensation Act; that said claimant sustained an accidental injury, which arose out of and in the course of the employment; that notice was served upon the employer and that claim for compensation was made within the times

provided by said Act; that the annual wages of the employee were $1,626.75; that the age of the claimant at the time of the accident was 62 years, and there were no children under sixteen years of age dependent upon him for support; that medical care was partially furnished, hospitalization was furnished; that compensation was paid during the temporary disability; that the questions to be decided here are: 1. The nature and extent of the injury, if any; and 2. Claim for medical; and temporary total compensation due, if any.

The evidence discloses that immediately after the claimant sustained the injury, he was taken to the St. Luke's hospital, where Dr. James C. McLallen rendered first aid. He was then placed in the care of Dr. H. B. Thomas, Orthopedic Surgeon. He testified that he was discharged by Dr. Thomas about the first day of April, 1945. In response to a question propounded to claimant regarding the condition of his hand at the present time, he testified that his hand hurts when it is straightened out and when he makes a fist, that it is a continuous pain. He was unable to grip anything small, that when he attempted to lift large objects, he could only hold it for a certain period of time, and then his hand gave away. Upon cross-examination, he testified that he could bend his middle finger to the first joint, and that he could not use his left hand as he had previously.

The evidence taken in this case is not satisfactory to the Court. It is not illuminating enough. There is, however, a report of the Division of Highways filed herein, which under Rule 21 is prima facie evidence of the facts set forth therein. This report substantiates in part the allegations in the complaint and the testimony of the claimant. It shows that while claimant was on a platform at the side of a mixing machine, directing

its operation, his foot slipped and he fell forward, thrusting his left hand into the drum of the mixer. The fingers of his left hand were caught between the agitator blades and the inside surface of the drum of the mixer, badly lacerating the middle and ring fingers. This report contains copies of three reports filed with the Division of Highways by Dr. H. B. Thomas, Professor Emeritus of Orthopedics, University of Illinois, College of Medicine, and are set out herewith in full:

"March 21, 1944, Mr. Norman Beggs sent Mr. Henry Hayward to St. Luke's Hospital where he was examined. On March 21, Mr. Hayward's left hand was caught in a tarring machine, as a result of which he severed the distal phalanx of the ring finger. This end phalanx hung by the two volar branches of the nerves of this finger and part of the tendon sheath of the flexor tendon. Both flexor and extensor tendons were severed, as were all the other tissues. The patient wanted very much that this finger be saved but the stump had no circulation whatever, so repairing the finger was out of the question. Enough bone was taken off of the 2nd phalanx so that it could be covered with viable skin. There was also a longitudinal laceration on the volar surface of this finger, extending almost to the first finger joint. The middle finger contained a longitudinal cut on the dorsal surface and extended through the tendon to the bone. This extensor tendon was quite macerated but was continuous. He is still in the hospital."

April 13, 1944, Dr. Thomas reported to the Division: "Mr. Henry Hayward was again seen this morning (4-13-44). All of his wounds are healed. The stump is slightly swollen but he is progressing satisfactorily and should be ready for light work."

May 12, 1944, Dr. Thomas made his final report to the Division which is as follows: "The distal phalanx of the ring finger is free and hanging by a couple of shreds of tissue. The middle finger presents a shredded cut over dorsal surface in middle phalanx. The ring finger was amputated in middle of 2nd phalanx. The wound of middle finger was debrided and sutured. This extensor tendon was quite shredded. When seen on May 3, he still complained of pain. The stump of the ring finger has a range of 15°. The distal inter-phalangeal joint of the middle finger moves but a few degrees."

The report further discloses that compensation for temporary total disability was paid claimant for the period March 29, 1944, to April 13, 1944, inclusive, at

the rate of $18.38 per week, totalling $42.01. The report further states that compensation was terminated April 13, 1944, the day Dr. Thomas reported "as progressing satisfactorily and should be ready for light work" and that the Division paid the following creditors in connection with the injury suffered by claimant:

Dr. H. B. Thomas, Chicago...................................$116.00
St. Luke's Hospital, Chicago................................ 60.00

Dr. T. C. Henderson was called on behalf of respondent who testified he examined claimant on or about October 20, 1944, and found that claimant had an injury to his left hand, consisting of an amputated ring finger at the middle of the second phalynx, and that the middle finger was ankylosed and had a range of about fifty per cent. He was unable to grip small articles. Upon examination of the claimant, he found that the industrial use of claimant's left hand had been reduced to about fifty per cent, and that in his opinion the claimant could only do light work, which would not require the exercise of forcing the hand.

This record establishes that the claimant and respondent were, on March 29, 1944, operating under the provisions of the Workmen's Compensation Act; that on the day last above-mentioned, said claimant sustained accidental injuries, which arose out of and in the course of the employment; that notice of said accident was given to said respondent and claim for compensation therefor was filed within the time required under the provisions of said Act.

That the earnings of the claimant during the year next preceding the injury were $1,626.75 (One Thousand Six Hundred Twenty-six Dollars and Seventy-five Cents) and that the average weekly wage was $31.28 and his compensation rate was $17.63.

That the necessary first aid, medical, surgical and hospital services have been provided by the respondent herein.

That the respondent paid to the claimant the sum of $42.01 temporary total compensation for the period March 29, 1944, to April 13, 1944, inclusive, upon which day he was released by Dr. Thomas for work.

The Court finds that claimant suffered the loss by amputation of the ring finger of his left hand and fifty per cent loss of use of the middle finger of his left hand.

The Court further finds that claimant is entitled to have and receive from the respondent the sum of $17.63 for a period of twenty-five weeks, amounting to the sum of $440.75, for the loss of the third finger of his left hand and the further sum of $17.63 for a period of 17½ weeks for the reason that the injury sustained to the second finger of claimant's left hand amounted to a fifty per cent permanent loss of use of said finger, all of which has accrued and is payable in a lump sum.

An award is therefore hereby entered in favor of the claimant and against the respondent as follows:

The sum of $440.75 specific award for the loss by amputation of the third finger of claimant's left hand and the further sum of $308.53 for fifty per cent of the permanent loss of use of the second finger of claimant's left hand, making a total award in the sum of $749.28 from which must be deducted the sum of $6.75 overpayment by the Division of Highways, leaving the sum of $742.53 all of which has accrued and is payable forthwith.

This award is subject to the approval of the Governor as provided in Section 3 of "An Act concerning the payment of compensation awards to State employees."